## Mary C. Darlington, Appellant, *v.* Allegheny City.

*Eminent domain—Evidence—Expert witness—Damages.*

In proceedings to assess damages and benefits for the opening of a street, a witness who states that he has been in the real estate business for about eight years; that he knows the property of plaintiff, and other property in the vicinity; that he had made sales of property on the street in recent years, and also knew of many other sales, some of which he particularized, is a competent expert witness to express an opinion that the improvement had not affected the market value of plaintiff's property.

*Eminent domain—Damages—Evidence—Cost of grading down lot.*

In a proceeding to recover damages for injuries alleged to have been sustained by the opening of a street, where the plaintiff claims as an element of damages the cost of cutting down the land to make it accessible from the street, evidence is admissible that a contractor had offered to grade down the land for nothing, and that plaintiff had refused the offer.

Where an old highway is in part within the limits of a new street the landowner is not entitled to have the value of the land within the limits of the old road taken as an independent element of damages.

*Practice, C. P.—Coercion of jury.*

A jury trial having closed on Friday afternoon about two o'clock, and the following Monday being a legal holiday, the judge told the jury that if they agreed upon a verdict before the usual hour of adjournment that day, to come into court and deliver it; and that if they agreed upon it after that hour, they need not come into court to deliver it the next day, Saturday, because jury trials were not held on that day or on Monday, because it was a holiday. The jury agreed upon a verdict within three hours, sealed it up, and separated, and then returned Tuesday morning and rendered it. *Held,* that there was nothing in the instruction to the jury to indicate any semblance of coercion.

Argued Nov. 9, 1898. Appeal, No. 180, Oct. T., 1898, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1896, No. 70, on verdict for plaintiff. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeal from report of viewers. Before PORTER, J.

Verdict and judgment for plaintiff for $3,500. Plaintiff appealed.

*Errors assigned* were (1, 2) rulings on evidence as set forth in the opinion of the Supreme Court; (4–8) the instructions referred to in the opinion of the Supreme Court.

*Frank C. Osburn,* with him *John C. McCombs* and *Samuel A. Ammon,* for appellant, cited as to qualifications of the expert witness: Michael v. Crescent Pipe Line, 159 Pa. 99; Struthers v. Philadelphia & Delaware County R. R., 174 Pa. 291.

Cited as to the grading being an element of damages: Righter v. Philadelphia, 161 Pa. 73; Patton v. Philadelphia, 175 Pa. 88; Wilkey v. Philadelphia, 180 Pa. 146.

Cited as to the alleged inadequacy of the charge: Tietz v. Philadelphia Traction Co., 169 Pa. 516; Richards v. Willard,

176 Pa. 181; Pennsylvania Canal Co. v. Harris, 101 Pa. 80; Herstine v. Lehigh Valley R. R., 151 Pa. 244.

Cited as to the alleged coercive instructions: Ingersoll v. The Town of Lansing, 51 Hun, 101; Green v. Telfair, 11 How. Pr. 260; People v. Sheldon, 50 Northeastern Rep. 840; Hancock v. Elam, 3 Baxter (Tenn.), 33; Physioc v. Shea, 75 Ga. 466; Terre Haute and Indianapolis R. R. Co. v. Jackson, 81 Ind. 19; Walters v. Junkins, 16 S. & R. 414; Scott v. Scott, 110 Pa. 387; Reitenbaugh v. Ludwick, 31 Pa. 131; Broad Top Coal & Iron Co. v. Riddlesburg Coal & Iron Co., 65 Pa. 435; Douglass v. Tousey, 2 Wendell, 352; Fox v. Smith, 3 Cowen, 23; Hatch v. Attrill, 118 N. Y. 383.

*Elliott Rodgers*, for appellee, cited as to the expert witness: Michael v. Crescent Pipe Line Co., 159 Pa. 104.

OPINION BY MR. JUSTICE DEAN, January 2, 1899:

The plaintiff owns an almost square tract of land, containing thirty-two acres in Allegheny city; Island avenue bounds it on the south, Shady avenue on the west, New Brighton road on the east, and Gifford street on the north, the last not yet opened. In October, 1895, city councils adopted an ordinance under act of May 16, 1891, opening a new street called Marshall avenue extending from Island avenue on the south across the property to Perrysville avenue about one and one half miles distant; the new street runs for 1,200 feet on plaintiff's property. At the instance of the city, viewers were appointed under the act of 1891, to assess damages and benefits to lot owners. Plaintiff presented to them a claim for $40,000 damages, and denied any benefits; they assessed against her $7,971, benefits, and $14,571, damages, leaving an award in her favor of $6,400. From this, she appealed to the common pleas and the evidence was there submitted by the court to a jury, who rendered a verdict in her favor of $3,500. She now appeals to this Court, assigning eight errors. The first is to the admission of testimony of O. A. Gailey an expert witness called by defendant as to market value of property as affected by the improvement. The witness stated he had been in the real estate business for about eight years, knew the property of plaintiff, and other property in that vicinity, and had made sales of property on Marshall avenue in 1895

and 1896 and also knew of many other sales, and particularized some of them. The plaintiff objected to his competency as an expert, because he had shown no special knowledge on the subject. The objection was overruled and the witness answered that in his opinion the improvement had not affected the market value of the property. He gave no figures in dollars. He was clearly competent to form and express such opinion and from his knowledge of market values in that neighborhood, might have gone more particularly into the subject, but defendant proceeded no further. His competency certainly to the extent he testified, is established by Dawson v. City of Pittsburg, 159 Pa. 326. And the very case cited by appellant to establish error, Michael v. Pipe Line Co., 159 Pa. 104, makes against him, for it is plainly implied, in the opinion, that if the witness there, had had such knowledge as Gailey, his testimony would have been competent. The first assignment is therefore over ruled.

The second assignment is to the admission of the testimony of W. E. Howley, the contractor who graded the street through the property. One of the items tending to show the amount of damages sustained by plaintiff, was, that to make her land accessible from the street it would be necessary for her to do 91,000 cubic yards of cutting. The witness was asked whether he did not offer to grade off the Darlington property for nothing. This was objected to, because while the cutting could be used by Howley for fills and therefore he could afford to remove it for nothing, that would be no evidence as to what would be a fair market price for doing such work. The court overruled the objection and the witness answered that while grading the street he had offered to grade off the whole property fronting on the street without charge to her, and the offer was declined by her agent after it was submitted to her, he at the same time stating that his client needed all the ground. From the nature of the work, there can be no market price for grading down lots to conform to a street, for there can scarcely be two cases alike in their circumstances. The character of the material to be dug, the distance to which it must be removed, and the cost of a place of deposit, all enter into the cost of grading. That plaintiff declined to have the work which she now claims large compensation for, done for nothing

with the reason for refusal, was some evidence tending to established as to what extent the market value of the property was affected by the necessity of cutting out and removing 91,000 cubic yards of earth. If she declined to have it done for nothing, because she wanted the ground, the jury might reasonably infer, that plaintiff's claim of $111,800, for removing it, was somewhat too high.

The third assignment is not pressed on the argument.

The fourth is to the refusal of the court to unqualifiedly affirm plaintiff's fourth point. Before the present improvement was projected plaintiff's property had been crossed for fifty years by an ungraded highway, thirty-three feet wide known as Black Lane; the new street follows the general line of this old highway, but is sixty feet wide. The plaintiff claimed that as the old road was not graded, and followed the undulations of the ground, her lots were accessible all along it, while the new street by reasons of cuttings and fills for the greater part of its length barred ingress and egress to what was the old road. The point and answer were as follows:

"In addition to the above, the plaintiff is entitled to compensation for the ground occupied by the original road, if the jury believe from the evidence that the present improvement has deprived plaintiff of the use of said road as a public highway, or as a means of ingress or egress for said property. *Answer:* This point is refused. The value of the land within the limits of the old road is not to be taken as an independent element of damage. You will consider the condition of the land and the road before the change, and the uses to which they were capable of being devoted, and you will consider the land and the road after it was widened and its grade established and the uses to which it was capable then of being devoted, and considering all of these things, and all the evidence in the case, you pass upon the question as to whether or not the market value of the tract as a whole was increased or decreased by this widening and establishment of the grade."

The plaintiff was not entitled to an unqualified affirmation of this point; the jury might very well have understood from such an answer that if access to this highway had been obstructed, then they should multiply the length of the highway by its width, thirty-three feet, and compensate her for that much land

The presumption is conclusive, that the landowner had been compensated for the public easement when the old road was laid out; whether the new street, wider and better for the public, had depreciated the market value of the land, as compared with that value with the old road alone upon it, was the question for the jury. The point introduced the value of the land occupied by the old road, as an independent element of damage. It is doubtless correct, as appellant's counsel argued, that he did not intend to ask for such instruction; but the court could only interpret the point by its language; as the point stood, the answer is manifestly correct. The fourth assignment is therefore overruled.

The fifth assignment of error is without merit. The point is really affirmed, not qualified; the court only made clearer to the jury its meaning.

The sixth assignment prefers exactly the same complaint as the fifth, and for the same reason both are overruled.

The seventh assignment complains that the charge was inadequate. In substance the inadequacy urged is a failure of the court to fairly present the significance of plaintiff's evidence to the jury. An examination of the charge shows that it was full and impartial; plaintiff's evidence was given all the importance it was entitled to. Without assuming the office of the advocate, the court could not have gone further.

The eighth assignment alleges the jury were coerced into rendering a verdict by the action of the judge. The trial closed on Friday afternoon about 2 o'clock; before they retired he made these remarks to them :

"Gentlemen, this branch of the court will remain in session until 3 o'clock, the usual hour of adjournment; if you agree upon a verdict before that time, you will render your verdict here; if you do not agree until after that hour, you will seal your verdict and separate. As jury trials are not held on Saturday, the court being engaged in the disposition of other business on that day, you will not be required to be in attendance tomorrow; and Monday being Decoration Day, a legal holiday, there will not be a session of the court. You will not be required therefore to return your sealed verdict until Tuesday morning, when you will render your verdict to Judge KENNEDY in the other room, as I will not be sitting in the court at that time."

It requires more astuteness than we possess to detect a semblance of coercion in this instruction. The jury are told if they agree upon a verdict before the usual hour of adjournment that day, to come into court and deliver it; if they agree upon it after that hour, for very good reasons, they need not come into court to deliver it the next day, Saturday, or on Monday, he does not instruct them that if they do not agree, they can communicate with him on Saturday, or with either of the other judges of equal power with him on Sunday or Monday; he assumed and had a right to assume, the jury were not ignorant of their privilege and right in this particular. Disagreement was not very imminent and he very properly did not suggest it. He expected agreement and to provide for the separation of the jury, and to promote their comfort when this happened was the object of these last remarks, and the jury so understood them. They agreed upon their verdict within three hours, sealed it up and separated, then returned Tuesday morning and rendered it. The remarks in view of the facts had no tendency to coerce, and did not coerce the jury. Not one of the cases cited has any application to the facts before us. Appellant was heard before the viewers; not satisfied with their award she demanded a hearing in court before a jury, and there, after a full and fair trial she got about half the amount the viewers awarded her; the real burden of her complaint here is that the jury erred; we cannot help that.

All the assignments of error are overruled and the judgment is affirmed.