# Thirteenth Street.

*Road law—Change of grade—Change of ownership—Act of May 16, 1891, P. L. 75.*

1. Where an ordinance authorizes the change of grade of a street which had already been opened as a public highway, the person entitled to receive the damages for the injury resulting from the change of grade is the owner at the time the actual work on the ground is begun, and not the owner at an earlier date; and this is the case even if the petition for the appointment of viewers had been presented by the owner of an earlier date. This was the law prior to the passage of the Act of May 16, 1891, P. L. 75, and that act has not established a different rule.

2. The right to compensation in such a case accrues to the owner, and the cause of action arises only when the injury is complete, and the injury is complete under the constitutional provision relating to the taking or injury of private property for public use, as soon as the part of the work which will do the injury is begun.

3. The fact that the fourth section of the Act of May 16, 1891, P. L. 75, authorizes the appointment of viewers before or at any time after the entry, taking or injury of a property, does not change the rule as to the person entitled to receive the damages.

4. Viewers appointed to ascertain the damages, costs and expenses in the grading of a street, cannot make the report required by the act, until the costs and expenses of the grading have been ascertained. It follows from this that although viewers may be appointed prior to the actual work, they cannot make their report until the costs and expenses of it have been ascertained.

5. The proceedings between the appointment of the viewers and the beginning of the actual work is tentative and experimental, and it is only when the municipality takes the property, or enters upon the actual work, that its liability becomes fixed, and the then owner becomes entitled to compensation.

Argued Oct. 14, 1908. Appeal, No. 113, Oct. T., 1908, by Mary E. Brownlee, from decree of C. P. No. 5, Phila. Co., June Term, 1905, No. 1,443, dismissing exceptions to the report of viewers in case of Change of Grade of Thirteenth Street from Godfret Avenue to a point 230 feet north of Sixty-fifth Avenue north in the forty-second ward of the city of Philadelphia. Be-

266  THIRTEENTH STREET.

HEAD, JJ. Affirmed.

Exceptions to report of viewers.
The facts appear by the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to report of
viewers.

*J. Lee Patton,* for appellant.—There can be no doubt of the
right of a party interested to have viewers appointed and dam-
ages assessed before the physical grading or opening is com-
menced: Weikel St., 11 Pa. Dist. Rep. 651; Winter Avenue, 23
Pa. Superior Ct. 353.

A landowner becomes entitled to damages for opening a
street through his property upon confirmation of the report of
the jury assessing them, and that he is also entitled to interest
from the date of the confirmation: Corry v. Chair Co., 18 Pa.
Superior Ct. 271; Second Ave., 7 Pa. Superior Ct. 62.

If it is true, then, that an owner can petition and have dam-
ages assessed for change of grade, and in the absence of a repeal-
ing ordinance and exceptions, have confirmation of the report
awarding damages for said change of grade before the physical
grading, and it is true, also, that confirmation of a report award-
ing damages is a judgment, entitling the awardees to a man-
damus execution, it is most respectfully urged that Mary E.
Brownlee is entitled in the present case to the damages. The
right to have the damages ascertained accrued upon the pas-
sage and approval of the ordinance. This right she proceeded
to enforce. Had the jury reported promptly, she would still
have been the owner, and could have had confirmation of the
report, even though no grading had been done. It was her
right; her claim; and she proceeded to assert it and continued
to assert it to the end. Moreover, she did not assign this claim
or right: Philadelphia v. Dickson, 38 Pa. 247.

As it logically follows from the provisions of the act of 1891,
that an award of damages can be had and confirmed before the
physical grading, it also must of necessity follow that the right

to have the damages ascertained accrues upon the approval of the ordinance and that hence the injury dates from that date.

The question whether the rule has been changed by virtue of the provisions of the Act of May 16, 1891, P. L. 75, has never been judicially determined, although an effort was made to have it done in the case of Howley v. Pittsburg, 204 Pa. 428.

In Witman v. Reading, 191 Pa. 134, it was held: "By actual opening and construction of the street the date of taking relates back to the date of the ordinance adopting the route."

And in Shields v. Pittsburg, 201 Pa. 328, where land was taken for park purposes, the court held that the appropriation dated from the passage of the appropriating ordinance.

*Bertram G. Frazier*, with him *John W. Frazier, Jr.*, for Everett M. and Annie K. Matthews and Nellie T. Powell, appellees.— The principle of law that the owner at the time the physical work is done is the one entitled to recover in a change of grade proceeding is too well founded and has been too often decided to warrant a lengthy discussion of the subject: Clark v. Phila., 171 Pa. 30; Ogden v. Phila., 143 Pa. 430; Howley v. Pittsburg, 204 Pa. 428.

*C. W. Van Artsdalen* for Clara Hepburn, appellee.

OPINION BY PORTER, J., February 26, 1909:

Mary E. Brownlee, the appellant, on June 14, 1905, presented her petition to the court below representing that Thirteenth street, between Godfrey avenue and a point 230 feet north of Sixty-fifth avenue north, in the forty-second ward of the city of Philadelphia, was a legally open street upon the public plans of the city and that by ordinance approved April 8, 1902, the councils of the city authorized the grading of the said part of Thirteenth street, that the petitioner was the owner of property, abutting upon the said part of Thirteenth street, and "that by reason of the grading of the said Thirteenth street plaintiff's property was greatly damaged and injured." The petitioner prayed for the appointment of three disinterested citizens to assess the damages and benefits caused by reason of the said

change of grade of Thirteenth street. The court below, on June 23, 1905, appointed the viewers as prayed for. The viewers filed their report in the court below, on March 26, 1908, finding, inter alia, that the properties owned by Everett M. and Annie K. Matthews, Amelia Baum, Clara Hepburn and Nellie T. Powell, respectively, were damaged by the grading. The appellant filed exceptions to the several awards of damages to the parties named, averring that the compensation for the injuries to the properties owned by said parties, respectively, should be awarded to her. The court below overruled the exceptions and confirmed the report of the viewers. Mary E. Brownlee appeals from this decree and, having abandoned her claim as to the amount awarded to Amelia Baum, now contends that the decree should be modified and that the damages which were awarded to Everett M. and Annie K. Matthews, Clara Hepburn and Nellie T. Powell, respectively, should be decreed to be paid to the appellant, instead of to said parties. The question is not as to the amount of the damages, nor whether the city is liable, but is as to the party entitled to receive payment for the damages sustained by the several properties. The contest is between parties who owned the property at different times during the pendency of the proceeding.

The report of viewers states the facts as to the ownership of the properties in question, thus bringing those facts upon the record. All the property in this proceeding in question was from November 4, 1898, to November 10, 1903, owned by Abraham L. English and Forrest B. English, who on the date last mentioned conveyed the same to Mary E. Brownlee, the appellant. Mary E. Brownlee, on July 11, 1905, conveyed a part of the property to Nellie T. Powell, who still continues to be the owner of said part; she conveyed another part, on September 23, 1905, to Everett M. and Annie K. Matthews, who still continue to be the owners of said part; and, on October 16, 1907, she conveyed what remained of said property to Clara A. Hepburn, who still continues to own said part. The report of viewers further finds that the grading of the street was physically begun by the city of Philadelphia on December 20, 1907, and that it had not been entirely completed on March 6, 1908, when the re-

port was made. These findings of fact are admitted by all the parties to be true. The property was, therefore, owned by Abraham L. English and Forrest B. English at the time the ordinance authorizing the grading was approved, but they had parted with the title before the petition for the appointment of viewers was presented and they had no interest in it at the time the physical change of grade was begun. Mary E. Brownlee had no interest in the property at the time the ordinance was approved, although she had acquired title thereto when she presented her petition for the appointment of viewers, but she had parted with her entire interest in the property before the city began to make the physical change of grade. Neither Nellie T. Powell, Everett M. and Annie K. Matthews, nor Clara Hepburn, had title to their respective lots at the time the ordinance was approved, nor at the time the viewers were appointed, but they did each acquire title to their respective properties prior to the time the city began to make the actual change of grade. Abraham L. English and Forrest B. English on November 8, 1907, assigned any claim which they might have for damages to the property arising from the grading of Thirteenth street to Mary E. Brownlee; this was after Mary E. Brownlee had parted with her title to the property but before the actual grading was begun. The appellant did not attach to her petition for the appointment of viewers, nor has she printed in her paper-book, a copy of the ordinance relating to the grading of the street. The petition stated that the city had by ordinance, approved April 8, 1902, "authorized the grading of the street." We cannot upon this mere statement assume that the provisions of the ordinance were peremptory, or that they did more than vest authority in an executive officer to proceed at his discretion when he had funds and the time was ripe. The property being situate in the city of Philadelphia and the proceeding having its inception in a petition for the appointment of viewers in the court of common pleas, the statutory authority for these assessments must be found in the Act of May 16, 1891, P. L. 75. The street having already been opened, the proceeding did not involve an assessment of damages for the opening or widening of a highway, and the Act of May 26, 1891, P. L. 117, can have no application in

determining the rights of these parties. The question presented
is whether, under the circumstances involved, the owner at the
time the actual work on the ground is begun, or the owner at an
earlier date, is entitled to the damages resulting to a property
from the change of the grade of a street which had already been
opened as a public highway prior to the authorization of such
change of grade.

The rule in proceedings of this character had, prior to the ap-
proval of the Act of May 16, 1891, P. L. 75, been well established
by the decisions; it was the physical change and not the mere
establishment of a grade, or the declaration of the intention of
the city to grade the street at some time in the indefinite future,
that gave the right of action, and the owner at the time the
actual work on the ground was begun was the party entitled to
receive the damages: Howley v. Pittsburg, 204 Pa. 428; Devlin
v. Philadelphia, 206 Pa. 518, and cases there cited. This rule
determined that the owner of the property at the time the actual
injury was done was the person entitled to recover. The ap-
pellant contends that the act of 1891 calls for a new rule in cases
of this character. The injury which a property suffers from a
change in the grade of a street upon which it abuts is a conse-
quential one and the right to compensation for such injury is
primarily founded in the constitutional provision: "Municipal
and other corporations, and individuals vested with the privi-
lege of taking private property for public use, shall make just
compensation for property taken, injured, or destroyed by
the construction or enlargement of their works, highways or
improvements, which compensation shall be paid or secured
before such taking, injury or destruction." The right to com-
pensation accrues to the owner, and the cause of action arises
only when the injury is complete, and the injury is complete,
under the constitutional provision, as soon as the part of the
work which will do the injury is begun: O'Brien v. Railroad
Company, 119 Pa. 184; Change of Grade in Plan 166, 143 Pa.
414. This was the well-recognized rule at the time the statute
of May 16, 1891, was enacted, and is to be kept in view in de-
termining the effect which should be given that statute. Mr.
Chief Justice MITCHELL, in Howell v. Morrisville Borough, 212

Pa. 349, after reviewing the events which preceded and led to the adoption of the statute, considered the purpose, scope and effect of the act of 1891, using this language: "It is in form and intent a general act, but it is part of the series of curative acts on the subject and manifestly intended as a blanket supplement to the others, to supply deficiencies and confirm doubtful powers under existing legislation." "It is a uniform grant of power to municipalities of all grades, supplementary as already said to their existing authority, and in aid of their ability to reimburse themselves for the cost of the improvements." "But its purpose was the protection of the interest of the cities, and there is neither express provision nor clear implication anywhere in the act of any intent to increase the obligations of the cities or enlarge the rights or claims of property holders. As to them, as said by our Brother DEAN, in Daughters of American Revolution v. Schenley, 204 Pa. 572, the act adopted no new rule but merely accepted the law as it stood." It was in that case held that this statute did not operate to give an owner whose property had been injured by the vacation of a street the right to recover damages, although the "vacation of streets" was included in the title of the act and in the sections of the statute upon which this appellant relies. A like view of the effect of this statute was taken in Seaman v. Borough of Washington, 172 Pa. 467, and Mill Creek Sewer, 196 Pa. 183. In the Park Avenue Sewer Cases, 169 Pa. 433, referring to the same statute, the present chief justice said: "No indication is anywhere given that damages are to be allowed or benefits imposed on any different basis than the usual one of the special and local effects of the improvement along its line. A departure from the long-established line will not be presumed in the absence of explicit expression of such legislative intent."

The enacting parts of the statute, secs. 1, 8 and 9, follow the same phraseology "All municipal corporations of this commonwealth shall have power whenever it shall be deemed necessary" in the opening, widening, vacating, grading, etc., of streets, constructing bridges, sewers, etc., "to take, use, occupy or injure private lands, property or material." The first section, in addition to the grant of power, provides for the appoint-

ment of viewers, in case the compensation for the damages or benefits accruing have not been agreed upon, upon the petition of the municipal corporation or any person interested. The second and third sections regulate the proceedings before the viewers and provide for the assessment of the damages and benefits. The fourth section provides that the viewers may be appointed "before or at any time after the entry, taking, appropriation or injury of any property or materials for constructing said improvements." The sixth section provides for the filing of exceptions to the report of viewers, and empowers the court to confirm the report, or to modify, change or otherwise correct the same or change the assessments made therein, or refer the same back to the same or new viewers. The seventh section provides that any municipal corporation may repeal any ordinance passed, or discontinue any proceeding taken, providing for any of the improvements mentioned, prior to the entry upon, taking, appropriation or injury to, any property or materials, and within thirty days after the filing of the report of viewers assessing damages and benefits.

The appellant contends that because the fourth section of the statute authorizes the appointment of viewers before or at any time after the entry, taking or injury of the property, that, therefore, a new rule must be adopted not only as to the time when the damages are to be ascertained, but as to the party to whom those damages are payable. The statute contains no express provision referring to a legislative intention to change the rule as to the party entitled to damages which had before existed. The cases hereinbefore cited must be accepted as clearly establishing that this statute did not give a remedy for any injury for which compensation was not allowed by some preexisting law. The statute manifestly intends to give compensation for the taking of or actual injury to the property, and not for the mere passage of a municipal ordinance.

The first, second and fourth sections of the statute must, for the purposes of this case, be construed in connection with the eighth. The eighth section contains a grant of power to municipal corporations, among other things, "upon the petition of a majority of property owners in interest and number abut-

ting on the line of the proposed improvement, to be verified by affidavit, etc., to grade, pave, curb, macadamize and otherwise improve any public street or public alley within its corporate limits." "On petition, viewers shall be appointed as provided in the first section of this act, who shall assess the costs and expenses of the sewer, or grading, paving, curbing, etc., of each street or alley upon the property benefited according to benefits, if sufficient can be found, but if not, then the deficiency, when finally ascertained, shall be paid by the municipal corporation, and the proceedings of said viewers and the proceedings on their report, shall be, as provided in this act, for viewers and reports of viewers, in cases of property taken, injured or destroyed." These provisions apply to the present case, for this involved only the grading of a street which had already been opened. The grading of streets had, it is true, been mentioned in the general grant of power in the first section, but the grant of power to grade is specifically dealt with in the eighth section and the provisions of that section must be observed and control in any case when there is an actual change of the grade of a previously open street. The viewers must ascertain the costs and expenses of the grading, and they must assess the costs and expenses upon the property benefited, if they find such property. The damages resulting from the change of grade and the costs and expenses of the grading are separate and distinct items, but the viewers consider both. The deficiency, if any, is to be assessed against the municipality, when finally ascertained. It is, therefore, evident that the viewers appointed to ascertain the damages, costs and expenses, in the grading of a street, cannot make the report required by this statute until the costs and expenses of the grading have been ascertained.

The viewers may, under the fourth section of the act, be appointed before the taking or injury of the property, but the appointment of the viewers does not determine that the petitioner or any other person is entitled to receive compensation. When the viewers are thus appointed before the actual injury, a property owner may have a prospective right, but that right is inchoate and defeasible. If there is a prospect that the buildings on a property will be rendered less valuable in case a change of

grade which a municipality contemplates should be actually carried into effect, the owner would not be entitled to compensation for that prospective and imaginary injury in the event of the destruction of the buildings by fire, or some other manner, before the injury had actually happened. The whole proceeding is tentative and experimental, under the provisions of the seventh section of the act, until the municipality has entered upon the property or begun the work which causes the injury, or the report of viewers has been filed and the municipality has not within thirty days thereafter repealed the ordinance. When the municipality takes the property or enters upon the actual work, its liability becomes fixed, and the property owner becomes entitled to compensation. When a report of viewers has been filed and, the municipality not having repealed the ordinance, the report is at the expiration of thirty days confirmed, the matter has been judicially determined and the awards have the effect of judgments. The act of 1891 made no change in the rule for ascertaining the parties who were entitled to compensation for the injury, nor did it make anything an injury entitling an owner to compensation which was not such under the then existing law. When anything takes place, after the viewers are appointed and before the actual injury which would entitle a person to compensation has occurred which works a change in the ownership of the property, it is the duty of the viewers to take notice of that fact and report accordingly. The effect of the ruling of the court below was to give the damages to the owners of the property at the time the injury was suffered, and in this there was no error.

The decree is affirmed and the appeal dismissed at costs of the appellant.